UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
DRITAN Q.,

                         Plaintiff,        <u>DECISION AND ORDER</u>
                                              1:23-cv-00997-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2019, Plaintiff Dritan Q.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Joseph Albert Romano, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

This case was referred to the undersigned on August 16, 2023. Presently pending is Plaintiff's Motion for Summary Judgment. (Docket No.

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

12). For the following reasons, Plaintiff's motion is due to be denied and this case is dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on October 21, 2019, alleging disability beginning September 20, 2019. (T at 270-76, 316).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on January 14, 2021, before ALJ John Carlton. (T at 77-107). Plaintiff appeared with an attorney and testified. (T at 84-86, 88-105). The ALJ also received testimony from Robert Baker, a vocational expert. (T at 86-88).

A second hearing was held on December 8, 2021, before ALJ Carlton. (T at 39-76).  Plaintiff appeared with an attorney and offered additional testimony. (T at 46-67).  The ALJ also received testimony from Jay Steinbrenner, a vocational expert. (T at 67-75).

### B.    ALJ's Decision

On March 29, 2022, the ALJ issued a decision denying the application for benefits. (T at 8-33).  The ALJ found that Plaintiff had not

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

engaged in substantial gainful activity since September 20, 2019 (the alleged onset date) and meets the insured status requirements of the Social Security Act through December 31, 2024. (T at 13).

The ALJ concluded that Plaintiff's lumbar dysfunction post-multilevel laminectomy and microdiscectomy; left shoulder derangement post arthroscopic repair; left knee partial cartilage defect and small chondral flap tear; depression; anxiety; and attention deficit hyperactivity disorder were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 15).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: he must be able to work either in a seated or standing position and be able to switch between the two positions throughout the day (but would be able to hold either for at least 20 minutes); cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, and crouch; cannot crawl or kneel or work at unprotected heights or around dangerous machinery. (T at 16-17).

The ALJ found that Plaintiff cannot reach overhead with his non-dominant upper extremity; is limited to no more than frequent reaching with the nondominant upper extremity; can lift no more than 5 pounds with his non-dominant upper extremity; and cannot use foot pedals with his left leg. (T at 17).

The ALJ concluded that Plaintiff was limited to simple routine work, not done at a production rate pace, with no more than occasional interactions with supervisors and coworkers; and no more than brief, superficial interactions with the public, and with such interactions not being a part of his general job duties. (T at 17).

The ALJ found that Plaintiff could not perform his past relevant work as a formal waiter (T at 24).  However, considering Plaintiff's age (43 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24-25).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between September 20, 2019 (the alleged onset date) and March 29, 2022 (the date of the ALJ's decision). (T at 26).  On December

13, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on February 6, 2023. (Docket No. 1).  On June 9, 2023, Plaintiff filed a motion for summary judgment, supported by a memorandum of law. (Docket No. 12, 13).  The Commissioner interposed a memorandum of law in opposition on August 7, 2023. (Docket No. 14).  On August 11, 2023, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 15).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...." 42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises four arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's step two determination.  Second, Plaintiff argues that the ALJ's Listings analysis was flawed.  Third, he contends that the RFC determination is not supported by substantial evidence.  Fourth, Plaintiff asserts that the step five findings cannot be sustained.  This Court will address each argument in turn.

A.    *Step Two Analysis*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

Here, the ALJ concluded that Plaintiff's lumbar dysfunction post-multilevel laminectomy and microdiscectomy; left shoulder derangement post arthroscopic repair; left knee partial cartilage defect and small chondral flap tear; depression; anxiety; and attention deficit hyperactivity disorder were severe impairments as defined under the Act. (T at 13).

Plaintiff points to evidence of cervical spine impairments and contends that the ALJ erred by failing to include them in the list of impairments identified as severe.

The failure to include a cervical spine impairment among the severe impairments was not error.  Nonetheless, even assuming the ALJ erred at step two any error regarding these impairments was harmless.

The ALJ found that Plaintiff had severe impairments within the meaning of the Social Security Act and continued the sequential analysis. The ALJ's highly detailed, carefully reasoned decision makes clear he considered all the evidence, including evidence of neck pain, tenderness to palpation of the spine, and painful range of motion. (T at 17-18, 118, 135-36, 568-69, 621, 628).  The RFC determination limits Plaintiff to a reduced range of sedentary work. (T at 16-17).

Plaintiff has not pointed to any additional, material limitations specifically related to his cervical spine impairments that the ALJ failed to consider when assessing his RFC.  The Court, therefore, finds no reversible error in this aspect of the ALJ's step two analysis.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)("Because these conditions were considered during the subsequent steps, any error was

harmless.")(citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error because ALJ's consideration of a doctor's report would not have changed the overall adverse determination)).

B.   *Listings Analysis*

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). "The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

Plaintiff argues that the ALJ erred because his impairments satisfy the "B" criteria for Listing 12.04 (Depressive, bipolar and related disorders). The "B" criteria for this Listing are met when a claimant has extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information;

interacting with others; maintaining concentration, persistence, or pace; and adapting or managing oneself.

The ALJ considered this Listing, but found it was not met because Plaintiff had no more than mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in maintaining concentration, persistence, or pace; and moderate limitation in adapting and managing himself. (T at 15-16).

Plaintiff cites the assessment of Dr. Jonathan Fiskus, who performed a consultative psychiatric evaluation in January of 2020.  Dr. Fiskus diagnosed bipolar II disorder with psychotic features, obsessive compulsive disorder, and posttraumatic stress disorder with panic attacks. (T at 576).

He opined that Plaintiff had no limitation with understanding, remembering, or applying simple directions or instructions; mild limitation as to understanding, remembering, or applying complex directions or instructions; mild impairment in using reason and judgment to make work-related decisions; marked limitation in interacting with supervisors, co-workers, and the public; marked limitation in sustaining concentration and pace; marked limitation with respect to sustaining an ordinary routine and regular attendance; and marked impairment in regulating emotions, controlling behavior, and maintaining well-being. (T at 576).

The ALJ found the very restrictive aspects of Dr. Fiskus's opinion unpersuasive.  (T at 23).  The Court finds this conclusion, as well as the ALJ's Listings analysis, supported by substantial evidence.

The ALJ reasonably found Plaintiff's activities of daily living, which included use of public transportation, paying bills, attending to his finances, shopping, socialization, attending school events for his children, and international travel, inconsistent with the marked limitations suggested by Dr. Fiskus. (T at 16, 307-08, 353-54, 865, 886, 1105).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked impairment where, as here, the claimant's activities are not consistent with that level of impairment. *See Santana v. Saul*, No. 18 CIV. 10870 (PED), 2019 WL 6119011, at *8 (S.D.N.Y. Nov. 18, 2019)(collecting cases recognizing ALJ's ability to discount assessment as inconsistent with claimant's activities); *see also Dorta v. Saul*, No. 19CV2215JGKRWL, 2020 WL 6269833, at *6 (S.D.N.Y. Oct. 26, 2020).

In addition, the treatment record consistently described Plaintiff as pleasant and cooperative and demonstrating good insight and impulse control. (T at 945, 948, 952, 954, 956, 958, 960, 962; 1125, 1127, 1129).

Again, while such indications cannot be given undue weight, they can provide important support for an ALJ's decision to discount a very restrictive assessment. *See, e.g., Knief v. Comm'r of Soc. Sec*., No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec*., No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Additional support for the ALJ's decision is found in the assessments of Dr. C. Walker and Dr. O. Fassler, non-examining State Agency review physicians, both of whom assessed moderate limitation with respect to Plaintiff's ability to sustain concentration and persistence, engage in social interaction, and adapt to changes in the workplace. (T at 119-20, 131-32). *See Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019) ("'[S]tate agency physicians are qualified as experts in the evaluation of

medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'")(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)).

Notably, the ALJ did not discount the evidence of Plaintiff's mental impairments and their impact on his ability to perform the demands of basic work activity.

Although the ALJ did not find the marked limitations assessed by Dr. Fiskus consistent with the overall record, he did recognize severe mental impairments and limited Plaintiff to simple routine work, involving no more than occasional interactions with supervisors and coworkers and no more than brief, superficial interactions with public. (T at 17). *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Platt v. Comm'r of Soc. Sec*., 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022)(collecting cases); *Walters v. Saul*, No. CV 19-3232 (AYS), 2021 WL 4861521, at *11 (E.D.N.Y. Oct. 19, 2021); *Jacqueline L. v. Comm'r of Soc. Sec*., 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021). This limitation was more than

sufficient to account for Plaintiff's mental impairments that the ALJ included in the RFC.

For these reasons the Court concludes there was no error in the ALJ's Listings analysis (and/or with respect to the ALJ's consideration of Plaintiff's mental impairments more broadly).

C.   RFC

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).  When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As referenced above, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: he must be able to perform work either in a seated or standing position and be able to switch between the two throughout the

day (but would be able to hold either position for at least 20 minutes);
cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps
and stairs, balance, stoop, and crouch; and he cannot crawl or kneel or
work at unprotected heights or around dangerous machinery. (T at 16-17).

The ALJ also found that Plaintiff cannot reach overhead with his non-
dominant upper extremity; is limited to no more the frequent reaching with
the nondominant upper extremity; can lift no more than 5 pounds with non-
dominant upper extremity; and cannot use foot pedals with his left leg. (T at
17).

The ALJ's RFC determination is supported by substantial evidence.
Here's why.

The ALJ carefully reviewed the medical records, which included a
history of lumbar discectomy, but good strength and grossly intact
sensation in the lower extremities and only mild reduction in strength of the
left arm and leg. (T at 18-20, 621, 629, 635, 644, 817, 822, 826, 830, 849,
1054).  The ALJ also reasonably read the record as documenting symptom
relief through epidural injections, over-the-counter medication, chiropractic
care, and physical therapy. (T at 19, 798, 812, 1109).  The ALJ further cited
Plaintiff's activities of daily living, which included self-care, pet-care,

shopping, driving, airplane travel, and some childcare. (T at 19, 20, 22, 58-59, 567, 886, 1112).

Dr. Reynolds and Dr. Kirch, the non-examining State Agency review physicians, opined that Plaintiff could perform light work. (T at 22, 118, 135-36).  Dr. Ann Marie Finegan performed a consultative examination in January of 2020 and concluded that Plaintiff had marked limitation with respect to kneeling, crouching, crawling, and balancing, should not perform any job functions that required the use of a foot petal, should not perform activities at unguarded heights or around dangerous machinery, should not perform any work above desk height using the left arm, and should not lift, push, pull, or carry more than about eight pounds with his left arm. (T at 569).

The ALJ reasonably reconciled the treatment record and medical opinion evidence in formulating an RFC supported by substantial evidence. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018)(the ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the overall assessment is supported by substantial evidence and consistent with applicable law).

Plaintiff offers an alternative reading of the record in support of a more restrictive RFC.  However, it is the Commissioner's role to resolve

conflicts in that evidence. *See Cage v. Comm'r of Soc. Sec*., 692 F.3d 118, 122 (2d Cir. 2012); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

The fact that there is some evidence that arguably supports an alternative assessment is not dispositive under the deferential standard of review applicable here. *See Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.")(emphasis in original) (citation and internal quotation marks omitted); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.")(citation omitted).

There is no question that Plaintiff suffers from pain and limitation. The ALJ did not dismiss the evidence of pain and limitation and, instead found Plaintiff limited to a reduced range of sedentary work. (T at 16-17).

However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the conclusion that Plaintiff retained the RFC to perform a reduced range of sedentary work, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  This is more than sufficient to sustain the disability determination under the deferential standard of review applicable here.

D.    *Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 23-24).  In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of table worker, semiconductor bonder, and surveillance system monitor, which exist in significant numbers in the national economy. (T at 25).

Plaintiff contends that the ALJ's step five analysis is flawed arguing that the hypothetical questions presented to the vocational expert during the administrative hearing did not include all of his limitations.

Plaintiff's argument is a restatement of Plaintiff's other challenges to the ALJ's RFC determination and is unavailing for the reasons outlined above. *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.


Dated: October 30, 2023                    *s / Gary R. Jones*

                                                         GARY R. JONES
                                                         United States Magistrate Judge